## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

LEE HENRY BERRY,

  *Petitioner*,

*v.*

UNITED STATES OF AMERICA,

  *Respondent*.

_____/

    CRIMINAL CASE NO. 05-CR-20048
    CIVIL CASE NO. 10-CV-12633


    DISTRICT JUDGE THOMAS LUDINGTON
    MAGISTRATE JUDGE PATRICIA T. MORRIS


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE


## I. RECOMMENDATION

  For the reasons set forth below, **IT IS RECOMMENDED** that Petitioner's motion be **DENIED and that the civil case be DISMISSED**.


## II. REPORT

### A. Introduction

  Petitioner Lee Henry Berry asks the Court to vacate his sentence, imposed on December 20, 2007, and recalculate it to accord with his conclusions. (Mot. to Vacate Sentence 2, Doc. 132 at 1.) His argument clusters various grievances under an umbrella ineffective assistance of counsel claim and also asserts additional grounds based on "actual innocence." (*Id.* at 14, 19, 28.) Unsatisfied with the fullness of his Motion, he also seeks leave to amend, not to reshape or refine his request, but rather to augment it. (Mot. to Amend Doc. 138.) Finally, after laboring through

over fifty pages of argument, nearly clotted with caselaw citations, he now feels he needs counsel and requests that the Court appoint one for him. (Motion to Appoint Counsel Doc. (137.)

United States District Judge Thomas Ludington has referred all of the Motions to the undersigned. The Court concludes that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for report and recommendation without oral argument.

###   B.   Background

In February 2000, Petitioner pleaded guilty in Bay County, Michigan, Circuit Court to one count of delivery of less than fifty grams of cocaine. (Brief in Support of Mot. to Vacate Sentence 1, Doc. 104 at 2.)[1] Petitioner states that his probationary period stemming from that conviction concluded on June 18, 2004. (*Id*. at 4.) Approximately ten months later, on April 29, 2005, Petitioner was arrested and charged in state court with possession of cocaine, probation violation, and failure to give notice of his changed address. (*Id*. at 2.) On November 3, 2005, he pleaded guilty in Bay County Circuit Court and was sentenced to prison for seven-and-one-half to twenty years.

Four weeks after he was sentenced in state court, a federal grand jury in the Eastern District of Michigan indicted on four drug charges and two weapons charges stemming from the 2005 arrest. (*Id*. at 3.) Following a jury trial on those charges, Petitioner was convicted of three counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On December 20, 2007, Petitioner was sentenced to concurrent terms of thirty years on each count, to run consecutively to an existing Michigan Department of Corrections' sentence. On appeal, the

---

[1] Page citations to this document refer to the page numbers assigned by the Court's electronic case-filing system, not to the page numbers appearing on the physical document.

2

Sixth Circuit affirmed Petitioner's conviction and sentence. *United States v. Berry*, 565 F.3d 332 (6th Cir. 2009). The United States Supreme Court denied certiorari on October 5, 2009. *Berry v. United States*, 130 S. Ct. 275, 275 (2009).

Petitioner filed his first motion to vacate his federal sentence under 28 U.S.C. § 2255 on June 30, 2010. (Doc. 104.) Judge Thomas L. Ludington denied the motion and declined to issue a certificate of appealability. *United States v. Berry*, Nos. 05-20048, 10-12633, 2011 WL 1627902, at *3 (E.D. Mich. Apr. 29, 2011.) At the end of June, 2011, Berry sought a certificate of appealability from the Sixth Circuit. *Berry v. United States*, No. 11-1830, (6th Cir. June 30, 2011). The case was dismissed that August due to an unpaid filing fee, but his pauper status had not been revoked and consequently the court reinstated the case in October. His appeal proceeded until December 27 when the court denied his certificate and later denied his motion for reconsideration. He then sought sentence reduction based on amendments to the Sentencing Guidelines; the District Court denied these motions on June 11, 2014. *United States v. Berry*, No. 05-cr-20048, 2014 WL 2607367, at *1, 6 (E.D. Mich. June 11, 2014).

He now claims that counsel was ineffective and he presents actual innocence arguments. In particular, he says counsel failed to (1) offer evidence that Petitioner's prior convictions were invalid, (2) object to Count Five in the indictment, and (3) request dismissal of multiplicitous charges in the indictment. (Brief in Support of Mot. to Vacate, Doc. 133 at 1-44.) Using these same arguments and rationales, he also asserts that he was actually innocent of all four convictions. (*Id.*) His amended motion simply adds that he should be resentenced because the Court used impermissible sources to determine the nature of his prior convictions. (Mot. to Amend, Doc. 138 at 2-6.) Finally, feeling "ill-equipped" to further develop his arguments, he requests appointment of counsel. (Mot. to Appoint Counsel, Doc. 137 at 1.) Berry was imprisoned in Leavenworth,

3

Kansas when he filed the petition. (Doc. 132 at 1.) He is currently confined in Lewis Run, Pennsylvania. Federal Bureau of Prisons, *Inmate Locator*, http://www.bop.gov/inmateloc/ (last visited Aug. 1, 2014).

Though labeled a section 2255 motion, Berry actually presents the Court with a 2241 petition: he argues that section 2255 is inadequate and that he may bring the 2241 petition because he is actually innocent. (Doc. 133 at 1-7.) Indeed, in his "motion" and on the first page of his brief, he requests relief under section 2241. (Mot. to Vacate Doc. 132 at 2; Doc. 133 at 1.) Because he was confined elsewhere, I suggest that the Court lacks jurisdiction to decide his petition. Transfer would be appropriate if it served the interests of justice, but his claims are not cognizable in any jurisdiction and transfer is thus unnecessary.

### C.     Governing Law and Analysis

### 1.     General Law

#### a.     Section 2255 Motions and the Savings Clause

To prevail on a § 2255 motion "'a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of section 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a section 2255 motion alleging non-constitutional error only by establishing a "'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks omitted)).

A court is required to notify the United States attorney, grant a hearing to determine the issues, and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), contains a one-year statute of limitations for petitions seeking to vacate, set aside or correct federal sentences. 28 U.S.C. § 2255(f).[2] "Prior to [the AEDPA], a party could bring a § 2255 motion at any time." *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997). The one-year statute of limitations runs from the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255. When a § 2255 petitioner does not pursue a direct appeal to the court of appeals, his or her conviction becomes final on the date the time for filing such an appeal expires. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); *United States v. Cottage,* 307 F.3d 494, 499 (6th Cir. 2002). When a petitioner does not seek a writ of certiorari after the circuit court dismisses the appeal, "§ 2255's one-year limitation period begins to run when the time for seeking such review expires." *Clay v. United States*, 537 U.S. 522, 532

_____

[2]28 U.S.C. § 2255(f) states:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(2003). This occurs one year and sixty-nine days after the appeals court issued its mandate or one year and ninety days after the court of appeals entered its judgment. *Id.*

Petitioners seeking leave to file a second or successive 2255 motion must meet additional hurdles. *Id.* § 2255(h). The motion can proceed only after a panel of the court of appeals certifies that it contains at least one of two elements: (1) new evidence that "would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id. But see King v. United States*, 63 F. App'x 793, 795 (6th Cir. 2003) (upholding the district court's denial of successive motion despite its failure to transfer to the Sixth Circuit for successive motion authorization); *McCall v. United States*, 27 F. App'x 463, 464 (6th Cir. 2001) (same).

The first alternative requires a "prima facie showing," meaning "'a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" *In re Lott*, 366 F.3d 431, 432-33 (6th Cir. 2004) (quoting *Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997)).[3] The second alternative is difficult to satisfy. Read together with section 2255's one-year statute of limitations, which begins when the Court creates the rule, 28 U.S.C. § 2255(f)(3), the petitioner's window of opportunity under that alternative is narrow–the Court must declare the rule retroactive within a year of first espousing it. *Dodd v. U.S.*, 545 U.S. 353, 359 (2005).

---

[3] Though *In re Lott* dealt with provisions relating to 28 U.S.C. § 2254, cases under that section give guidance on section 2255. *See In re Abdur'Rahman*, 392 F.3d 174, 182 (6th Cir. 2004) ("This ruling applies with equal force to motions brought in the 28 U.S.C. § 2255 context since [the The Antiterrorism and Effective Death Penalty Act of 1996] incorporates by reference the same 'second or successive' rules imparted in § 2254."), *vacated on other grounds*, *Bell v. Abdur'Rahman*, 545 U.S. 1151, 1151 (2005); *Martin v. Overton*, 391 F.3d 710, 713 (6th Cir. 2004) (applying rules from section 2255 cases to section 2254 because the sections were nearly indistinguishable); *Anderson v. United States*, 39 F. App'x 132, 134 (6th Cir. 2002) (noting that "28 U.S.C. § 2254 case law is largely applicable to § 2255 proceedings").

Prisoners unable to satisfy either alternative can file section 2241 petitions if they meet the stringent requirements in 28 U.S.C. § 2255(e), called the "savings clause." *Bannerman v. Snyder*, 325 F.3d 722, 723 (6th Cir. 2003). While section 2255 requests are motions to vacate a sentence, petitions under section 2241 seek writs of habeas corpus. *Charles v. Chandler*, 180 F.3d 753, 755 (6th Cir. 1999); *Gonzalez v. United States*, 150 F. Supp. 2d 236, 241 (D. Mass. 2001). Congress created section 2255 in 1948 for administrative rather than substantive reasons. Act of June 25, 1948, ch. 646, 62 Stat. 869, 967. The problem it sought to address resulted from section 2241's jurisdictional procedures, put in place in 1867, circumscribing district courts' power to issue the writ to "within their respective jurisdictions." Act of February 5, 1867, ch. 28, 15 Stat. 385; *Braden v. 30th Judicial Cir. Ct. of Kentucky*, 410 U.S. 484, 496 (1973). As the use of the writ grew in the twentieth century, courts in districts with federal prisons became overburdened. *Hayman*, 342 U.S. at 213-14; James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice and Procedure* § 41.2 (2013). Compounding the problem, as Justice Robert Jackson lamented, were the increasingly loose standards applied to the writ: "floods of stale, frivolous and repetitious petitions inundate[d] the docket of the lower courts and swell[ed] our own." *Brown v. Allen*, 344 U.S. 443, 536 (1953) (Jackson, J., concurring).

Section 2255 reallocates this burden across the districts, shunting federal prisoners' collateral attacks back to the sentencing court. 28 U.S.C. § 2255(a). A workable division has developed: the sentencing district has jurisdiction over claims against the conviction or the imposition of the sentence under section 2255, and the custodial district maintains jurisdiction on collateral claims against the execution of the sentence under section 2241. *Reminsky v. United States*, 523 F. App'x 327, 328 (6th Cir. 2013); *Dembry v. Terris*, No. 1:13-CV-10991, 2013 WL 2250756, at *1 (E.D. Mich. May 22, 2013) (citing *Charles*, 180 F.3d at 756-57).

Section 2255 preserves the breadth of traditional habeas review, available under section 2241, through the "savings clause." *See United States v. Hayman*, 342 U.S. 205, 219 (1952) ("Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions."). This allows federal prisoners, in limited circumstances, to use section 2241 petitions to challenge their convictions and the imposition of their sentences:

> An application for a writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255(e). *See Wooten v. Cauley*, 677 F.3d 303, 306-07 (6th Cir. 2012). This clause, however, incorporates liminal standards petitioners must fulfill before they are allowed to argue the merits of their section 2241 claim. *Wofford v. Scott*, 177 F.3d 1236, 1244 n.3 (11th Cir. 1999) ("[T]he savings clause of § 2255 applies to open the portal to a § 2241 proceeding . . . ."); *Surratt v. United States*, No. 3:12-CV-513, 2014 WL 2013328, at *4 (W.D. N.C. May 16, 2014) ("[T]he gateway to § 2241 is the 'savings clause' contained in 2255(e) . . . ."); *Best v. Holland*, No. 6:13-254-DCR, 2014 WL 1600593, at *2 (E.D. Ky. Apr. 21, 2014) (same). *See also Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010) (noting, in a similar context, that these claims are "'a gateway through which a habeas petition must pass to have his otherwise barred . . . claim considered on the merits'" (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

These threshold standards developed over a series of cases articulating the "miscarriage of justice" exception to the bar on successive habeas petitions. *Sawyer v. Whitley*, 505 U.S. 333, 339-41 (1992); *United States v. Addonizio*, 442 U.S. 178, 185 (1979) ("The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a

8

fundamental defect which inherently results in a complete miscarriage of justice.'" (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). That exception, in turn, came from Judge Henry Friendly's forceful argument that "actual innocence" should be one of the few grounds for collateral attacks. Hon. Henry Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970). His exacting definition of "actual innocence" required

> the petitioner for collateral attack [to] show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

*Id.* In 1986, the Supreme Court "adopt[ed]" this formulation for successive petitions, *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 455 n.17 (1986), "explicitly tying the miscarriage of justice exception to [the petitioner's] innocence . . . ." *Schlup v. Delo*, 513 U.S. 298, 322 (1995). The Court extended the exception to defaulted claims that same year. *Murray v. Carrier*, 477 U.S. 478, 497 (1986).

The Court later warned that the "exception would remain 'rare' and would only be applied in the 'extraordinary case' . . . ." *Schlup*, 513 U.S. at 321 (quoting *Kuhlmann*, 477 U.S. at 451; *Carrier*, 477 U.S. at 496)). To overcome bars on successive petitions, then, prisoners thus face a substantial burden: they must "establish[] that under the probative evidence [they have] a colorable claim of factual innocence." *Kuhlmann*, 477 U.S. at 454. The focus is on "'actual,' as distinct from 'legal,' innocence," *Smith v. Murray*, 477 U.S. 527, 537 (1986), as "where the State has convicted the wrong person of the crime." *Sawyer*, 505 U.S. at 340. *See also Bousley v. United States*, 523 U.S. 614, 624 (1998).

9

Cognizant that liberal use of the savings clause would swallow 2255(h)'s restrictions on successive motions, the Sixth Circuit emphasizes that "[t]he circumstances in which § 2255 is inadequate and ineffective are narrow." *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). Though the precise boundaries of savings clause remain unmapped, "it appears that a prisoner must show an intervening change in the law that establishes his actual innocence in order to obtain the benefit of the savings clause." *Enigwe v. Bezy*, 92 F. App'x 315, 317 (6th Cir. 2004). In other words, the savings clause operates "only if [the prisoner] had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). The change of law must be of a type "that eludes the permission in section 2255 for successive motions," otherwise section 2255 is not inadequate. *Id.* at 611-12.

Section 2255 thus proves inadequate where petitioners could neither bring the claim in their first 2255 motion because the basis for relief was not yet established law, nor bring it in a successive 2255 motion because the basis was not newly discovered evidence or a new constitutional rule. *United States v. Prevatte*, 300 F.3d 792, 800 (7th Cir. 2002) (citing *Davenport*, 147 F.3d at 610); *Peterman*, 249 F.3d at 461. For example, when the Supreme Court struck down an over-inclusive view of a firearms statute, the Sixth Circuit allowed prisoners convicted under the erroneous interpretation and who were otherwise barred from section 2255, to proceed with 2241 petitions. *In re Hanserd*, 123 F.3d 922, 926-30 (6th Cir. 1997) (discussing *Bailey v. United States*, 516 U.S. 137 (1995), *superseded by statute*, An Act to throttle criminal use of guns, Pub. L., 105-386, 112 Stat. 3469 (1998)). The interpretation was new and statutory, not constitutional–it consequently escaped section 2255 attack for some prisoners.

These steep standards consequently require petitioners to show more than that they dithered past section 2255's statute of limitations or are otherwise procedurally barred. *Id. See also Charles*, 180 F.3d at 756 ("[T]he § 2255 remedy is not considered inadequate or ineffective simply because § 2255 relief has already been denied, . . . or because the petitioner is procedurally barred from pursuing relief under § 2255, . . . or because the petitioner has been denied permission to file a second or successive motion to vacate . . . ." (citations omitted)).

The savings clause, no matter its stringency, is merely the entryway into court; the core claim comes from section 2241 and must be filed in the custodial jurisdiction. 28 U.S.C. § 2241(a); *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute . . . confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement."); *United States v. Griffith*, 89 F.3d 836, 1996 WL 316504, at *2 (6th Cir. 1996) (unpublished table decision) ("[T]he Eastern District of Michigan is not the proper venue to file a § 2241 motion for one incarcerated in Lompoc, California."). The type of jurisdiction the custodial district exercises under section 2241 is not entirely clear. It is not subject matter jurisdiction: 28 U.S.C. § 2244(a) authorizes all districts to hear habeas cases and issue writs to custodians in their jurisdictions. *Id.* at 452 (Kennedy, J., concurring). *See also* 28 U.S.C. § 1331; *Rumsfeld*, 542 U.S. at 463 (Stevens, J., dissenting). Rather, "the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue."[4] *Rumsfeld*, 542 U.S.(Kennedy, J., concurring). *See also id.* at 463 (Stevens, J., dissenting).

---

[4] In *Braden*, the Court stated that "[s]o long as the custodian can be reached by service of process, the court can issue a write 'within its jurisdiction' . . . ." 410 U.S. at 495. The Court in *Rumsfeld* rejected the argument that a district court could assert jurisdiction over anyone outside the district under a state's long-arm statute. 542 U.S. at 444-45.

Thus, section 2241's jurisdictional requirement "does not of necessity establish that the limitation goes to the power of the court to hear the case." *Id.* at 452 (Kennedy, J., concurring). Parties can accordingly consent to try the case outside the custodial jurisdiction, usually moving it to the convicting court,[5] or the petitioner can move for transfer. *See, e.g.*, 28 U.S.C. § 1404(a) (allowing change of venue "to any district . . . to which all parties have consented"); *Alamin v. Gerlinski*, 30 F. Supp. 2d 464, 468 (M.D. Penn. 1998) (transferring case to the convicting court upon the parties' consent); *cf. Gustafson v. Williams*, No. 2:09-cv-01225, 2010 WL 1904518, at *1-3 (D. Nevada May 10, 2010) (transferring case to convicting court over petitioner's protest); *Justus v. Cauley*, No. 0:09-CV-00106, 2010 WL 369310, at *5 (E.D. Ky. Feb. 1, 2010) (ordering transfer to convicting court); *Hudson v. Cauley*, No. 0:09-CV-00105, 2010 WL 369288, at *1, 6 (E.D. Ky. Feb. 1, 2010) (granting petitioners motion to transfer to convicting court).

In contrast, a petitioner's failure to make the threshold savings clause showings deprives the court of subject-matter jurisdiction. *Reminsky v. United States*, 523 F. App'x 327, 328-29 (6th Cir. 2013) (affirming district court's judgment that petitioner did not meet the savings clause, and therefore his challenge "is not cognizable under § 2241" and the court lacked subject-matter jurisdiction); *Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332, 1338 (11th Cir. 2013) ("[W]e hold that the savings clause does indeed impose a subject-matter jurisdictional limit on § 2241 petitions.").

---

[5] The Third Circuit has suggested in dicta that even with the parties' consent, petitions cannot be transferred to non-custodial jurisdictions. *In re Nwanze*, 242 F.3d 521, 525-26 (3d Cir. 2001) ("[I]t is doubtful that an inter-district transfer of a section 2241 petition may be made from the district of confinement to the district of sentencing to continue to be treated after transfer as a section 2241 petition . . . ."). This observation, however, was based on a prior version of 28 U.S.C. § 1404(a) (1996) that did not explicitly allow the parties to change the venue by consent. The current version allows such voluntary transfers to districts where the petitioner could not have originally brought the petition. 28 U.S.C. § 1404(a).

The proper respondent in a 2241 action is the person with custody of the petitioner.[6] 28 U.S.C. § 2243; *Roman v. Ashcroft*, 340 F.3d 314, 319-22 (6th Cir. 2003) ("Pursuant to the immediate custodian rule, a prisoner filing a habeas corpus petition should generally name as a respondent the warden of the prison where he is confined."). Petitions naming the wrong respondent, brought in the wrong jurisdiction, should be transferred or dismissed without prejudice. *Padilla*, 542 U.S. at 451; *Stokes*, F.3d at 1240.

        *b.*    *The Confinement Jurisdiction Makes the Savings Clause Determination*

A related issue, rare enough to have attracted scant case law but relevant nonetheless, is whether the sentencing court can make the savings clause determination. Most courts, explicitly or implicitly, find that the decision rests with the custodial court. *Garcia*, 470 F. App'x at 736 (holding that the sentencing court "did not have jurisdiction to reach the merits of [the] savings clause issue"); *Prevatte*, 300 F.3d at 799 & n.2 ("A § 2241 petition, even when sought by way of the savings clause of § 2255, must be filed 'in the district of confinement . . . , not the district where the case was tried,'" and thus "'the decision as to whether § 2255 is 'inadequate' and 'ineffective' is not ours to make.'" (quoting *Garza v. Lappin*, 253 F.3d 918, 921 (7th Cir. 2001); *Gray-Bey v. United States*, 209 F.3d 986, 989 (7th Cir. 2000)); *Hernandez v. Campbell*, 204 F.3d 861, 864-65 (9th Cir. 2000) (holding that when the court determines the petition comes under section 2241 it must transfer without additional analysis); *Fairly*, 2008 WL 2038381, at *2

---

[6] Prisoners can sometimes file against a different party, such as when they dispute detainers lodged by a non-custodial state or challenge a remote supervisor directly involved in the merits. *See, e.g.*, *Braden*, 410 U.S. at 498-99 (noting that "a petitioner held in one State [can] attack a detainer lodged against him by another State" by filing in the state seeking the detainer); *United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000) ("[Petitioner] will have the right . . . to file a 28 U.S.C. § 2241 petition in either the district where he is confined . . . or in any district in which the [Bureau of Prisons] maintains a regional office, as the [Bureau] can be considered [Petitioner's] 'custodian' for the purpose of calculating his pretrial detention credit."); *McCoy v. United States Bd. of Parole*, 537 F.2d 962, 964-65 (8th Cir. 1976) (noting that though the warden of the confining jail typically is the respondent, the Board of Parole there was the custodian because the petitioner challenged its actions, not the warden's).

(transferring the petition to the custodial court); *Bell v. United States*, No. 4:07cv506, 2008 WL 360615, at \*2 n.2 (N.D. Fla. Feb. 8, 2008) (adopting Report and Recommendation) ("Since a § 2241 petition must be brought in the district of confinement, a petition brought under the savings clause of § 2255 would have to be filed in the district of confinement."). Black letter law in the Fifth Circuit, for example, states that "[o]nly the custodial court has the jurisdiction to determine whether a petitioner's claims are properly brought under § 2241 via the savings clause of § 2255," and that district is "the appropriate court to make the savings-clause determination." *Padilla v. United States*, 416 F.3d 424, 426 (5th Cir. 2005).

The Sixth Circuit has observed in similar contexts that "[t]he use of the savings clause to establish jurisdiction does not transform a § 2241 habeas petition into a § 2255 motion," and consequently the petitioner does not need to meet that section 2255's other requirements. *Wooten*, 677 F.3d at 306. This suggests the savings clause does not amalgamate the sections so that the petition is under 2255 for some purposes, properly reviewed by the sentencing court, and under 2241 for other purposes, reserved for the custodial court. Courts in this Circuit have therefore transferred petitions to the confinement jurisdiction, or dismissed them outright, without examining the savings clause threshold. *Levon*, 2008 WL 5422682, at \*2-3; *Smith v. Warden, Fed. Corr. Inst., Forrest City, Ark.*, No. 99-20231, 2006 WL 2850322, at \*1-2 (W.D. Tenn. Oct. 3, 2006).

Section 2255 appears to mandate this result. It deals broadly with prisoners in federal custody. The savings clause itself states that a court cannot "entertain[]" an "application for a writ of habeas corpus . . . unless it also appears that the remedy by motion is inadequate or ineffective . . . ." 28 U.S.C. § 2255(e). The only court that can entertain such an application is the custodial court. The most natural reading, then, finds in the last clause an implicit reference to that court: it is the sole jurisdiction in which the "application" can properly "appear[]."

A few sentencing courts, however, dive into the savings clause analysis. *See Riggs v. Drew*, Nos. Civ. 5-23-P-S, Crim. 99-79-P-S, 2005 WL 1123620, at \*6-7 (D. Maine May 11, 2005) (sentencing court adjudicating the section 2255 threshold issue), *adopted by* 2005 WL 1528995 (D. Maine June 28, 2005); *cf. Taylor v. United States*, Nos. 5:06-CR-279, 5:12-CV-539, 2014 WL 652548, at \*4 (E.D. N.C. Feb. 19, 2014) (ordering the parties to brief whether the court must transfer the case to the custodial district if petitioner meets the savings clause); *Parks v. Williamson*, No. 08-403, 2009 WL 302229, at \*1-4 (E.D. Ky. Feb. 6, 2009) (reaching the merits after the initial custodial court at the time of filing transferred the case to Kentucky after the petition was transferred there).

> *Riggs* provides the most extensive analysis. There the Magistrate concluded that
>
> this court, which without dispute has jurisdiction over any § 2255 motions brought by [the petitioner] Riggs, can consider whether or not Riggs can evoke [sic] the § 2255 savings clause by filing a § 2241 motion; I believe the court need not dismiss or transfer this petition without making this determination on a theory that § 2241 relief, no matter what its contour, can only be sought in the district of Riggs's confinement.

2005 WL 1123620, at \*5-7. The decision cogently argues that peeking at the merits to cull frivolous claims and advance judicial economy better serves the savings clause's underlying purposes. *Id.* at 5-7. Congress designed section 2255 to unclog districts with federal prisons and accelerate collateral attacks by adjudicating them where they occurred. *Id. Riggs* also raises the possibility that a circuit split could produce disparate outcomes on collateral attack. Defendants convicted in one jurisdiction for indistinguishable conduct could be treated differently if confined in separate circuits split on the relevant law. *Id.* Yet, the obverse of this hypothetical is just as peculiar: the district without jurisdiction over the merits could prevent petitioners from presenting claims that would prevail in the district with jurisdiction.

In any case, all that *Rigg*'s procedure would accomplish is snare petitioners who mistakenly filed in the sentencing court. And even this trap allows easy escape: the decisions explaining this procedure to the disappointed petitioners would unwittingly guide those petitioners to re-file in the appropriate district. Consequently, the result does not differ from that achieved by either dismissing due to lack of jurisdiction or transferring to the correct district. Moreover, the case law proffered to support the argument is lacking: *Riggs* cites two opinions from one case that transferred from the custodial to the sentencing court, but the parties there consented to the move. *Id.* at 6 (citing *Alamin v. Gerlinski*, 73 F. Supp. 2d 607, 610-12 (W.D. N.C. 1999); *Alamin v. Gerlinski*, 30 F. Supp. 2d 464, 466-68 (M.D. Penn. 1998)). Thus, screening savings clause claims in the sentencing court might be a salubrious practice, but desired policies do not trump statutes and case law to the contrary.

###### c.    Transfers under sections 1631 and 1406

Prohibited from reaching the merits through the savings clause, sentencing courts routinely transfer wrongly filed 2241 petitions to the jurisdiction of confinement.[7] Other courts dismiss the petition without prejudice so that the prisoner can re-file in the appropriate district.[8] However, if the petitioners are shuffled to other districts after filing, they can maintain their cases in the initial

---

[7] *Garcia v. Warden*, 470 F. App'x 735, 736 (11th Cir. 2012) (ordering district court to transfer case to custodial court); *Hinojosa v. Maye*, No. A-11-CA-983, 2012 WL 2191694, at *2 (W.D. Tex. June 13, 2012) (noting that petitioner filed in the convicting court, which then transferred to the custodial court); *Holt v. Warden, Fed. Corr. Inst., Miami*, No. 1:12-cv-25, 2012 WL 1166381, at *1 (N.D. Fla. Apr. 6, 2012) (transferring case from the sentencing court to the custodial court) (Report and Recommendation), *adopted by* 2012 WL 162243 (N.D. Fla. May 09, 2012); *Fairly v. United States*, Nos. CV-F-06-1588, CR-F-95-5193, 2008 WL 2038381, at *1-2 (E.D. Cal. May 12, 2008) (same); *Smith v. Warden, Fed. Corr. Inst., Forrest City, Ark.*, No. 99-20231, 2006 WL 2850322, at *1-2 (W.D. Tenn. Oct. 3, 2006) (same).

[8] *Watkins v. United States*, No. 1:11-CV-118, 2013 WL 6668707, at *1 & n.1 (E.D. Tenn. Dec. 18, 2013) (dismissing case for lack of jurisdiction over the custodian); *Alegria v. Warden, Fed. Corr. Inst., Forest City*, No. A-10-CA-241, 2010 WL 2232805, at *2 (W.D. Tex. June 1, 2010) ("Because this Court does not have jurisdiction over Petitioner's § 2241 petition, it would not be appropriate to transfer the Petition to the Eastern District of Arkansas.") (Report and Recommendation).

confining jurisdiction. *Rumsfeld*, 542 U.S. at 441; *Ex parte Mitsuye Endo*, 323 U.S. 283, 304-07 (1944). *See also White v. Lamanna*, 42 F. App'x 670, 671-72 (6th Cir. 2002) (holding, implicitly, that when the custodial district changed after filing, the initial district could still rule on whether the petition met the savings clause). *But see Levon v. Eichenlaub*, No. 07-13771, 2008 WL 5422682, at *2-3 (E.D. Mich. Dec. 29, 2008) (finding the court lacked jurisdiction when, after filing, the petitioner was transferred to Pennsylvania). This holds even where the petitioner files in the wrong district, and then is transferred to a different facility: the custodial jurisdiction at the time of the erroneous filing retains jurisdiction despite the petitioner's present confinement elsewhere. *Stokes v. United States Parole Comm'n*, 374 F.3d 1235 (D.C. Cir. 2004).

The transfer and venue change statutes provide a potential hook allowing the sentencing court to make a limited scan of the merits and dismiss rather than transfer. 28 U.S.C. § 1631 (transfer); 28 U.S.C. § 1406(a) (venue). The transfer statute also applies to district courts faced with unauthorized successive motions that must be sent to the circuit court. *Wilson v. United States Att'y General's Office*, No. 1:09-cv-13394, 2009 WL 3872144, at *3 (E.D. Mich. Nov. 17, 2009). *See also In re Cline*, 531 F.3d 1249, 1251-52 (10th Cir. 2008) ("Where there is no risk that a meritorious successive claim will be lost absent a § 1631 transfer, a district court does not abuse its discretion if it concludes that it is not in the interest of justice to transfer the matter to this court for authorization.").

Courts lacking jurisdiction over a case "shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed . . . ." 28 U.S.C. § 1631. Likewise, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28

U.S.C. § 1406(a). *See also Roman*, 340 F.3d at 327-29; *United States v. Vasquez*, Nos. 1:89-cr-120, 1:94-cr-95, 2009 WL 1974455, at *3 (W.D. Mich. July 7, 2009). The two statutes are construed similarly and "confer broad discretion in ruling on a motion to transfer." *Stanifer v. Brannan*, 564 F.3d 455, 456-57 (6th Cir. 2009). *See also Jackson v. L & F Martin Landscape*, 421 F. App'x 482, 483-84 (6th Cir. 2009). It is an abuse of discretion "to refuse to transfer without determining whether transfer would be 'in the interest of justice.'" *Commodities Export Co. v. U.S. Customs Serv.*, 888 F.2d 431, 439 (6th Cir. 1989) (quoting 28 U.S.C. § 1631).

The "interests of justice" determination is narrow. The court can only transfer or dismiss the case, not dispose of it on the merits. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) ("[Section 1631] confers on the Federal Circuit authority to make a single decision upon concluding that it lacks jurisdiction–whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court of appeals that has jurisdiction."). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962)).

The analysis generally examines factors outside the merits, including whether the party's erroneous filing was a good faith mistake, the transfer conserves judicial resources, and the transfer inconveniences the parties. *Cordova-Soto v. Holder*, 732 F.3d 789, 792 (7th Cir. 2013); *Stanifer*, 564 F.3d 455; *Roman*, 340 F.3d at 327-29; *Miller*, 905 F.2d at 262; *Smith v. United States Bureau of Prisons*, 971 F. Supp. 2d 99, 102 (D. D.C. 2013). For example, if the statute of limitations has run on the claim preventing subsequent filings in the proper forum, courts often transfer rather than dismiss. 17 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 4104 (3d ed. 1998) ("This provision is designed to protect a plaintiff against either additional expense or the

expiration of a relevant statute of limitations in the event that the plaintiff makes an error in trying to select the proper court . . . ."). *But see Stanifer*, 564 F.3d at 460 (affirming dismissal despite expiration of statute of limitations).

However, courts can engage in a limited review of the substantive merits to ensure they do not transfer a "sure loser." *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999). As Judge Richard Posner explains, this power is "implicit" in the statute "and implies in turn that the court can take a peek at the merits, since whether or not the suit has any possible merit bears significantly on whether the court should transfer or dismiss it." *Id.* at 610-11. *See also Daniel v. Amer. Bd. of Emergency Medicine*, 428 F.3d 408, 435-36 (2d Cir. 2005) (noting that frivolous claims need not be transferred); *Washington v. Rehnquist*, 146 F. App'x 483, 484 (Fed. Cir. 2005) ("If an appeal is frivolous, it is not in the interest of justice to transfer to another court."); *Clark v. Busey*, 959 F.2d 808, 814 (9th Cir. 1992) ("Where no colorable claim for relief has been shown, transfer is improper."); *Rodriguez v. Martinez*, 935 F. Supp. 2d 389, 405 (D. Puerto Rico 2013) (allowing "peek" at merits in transfer analysis); *Watford v. United States*, No. 3:97-CR-26(02), 2012 WL 1301247, at *2 (N.D. Ind. April 13, 2012) (same); *Hapaniewski v. City of Chicago Heights*, 684 F. Supp. 1011, 1013-14 (N.D. Ind. 1988) (refusing to transfer, in part, because the complaint was frivolous); *Froelich v. Petrelli*, 472 F. Supp. 756, 761 (D. Haw. 1979) ("It would not be 'in the interest of justice' to transfer this case if the suit would be barred in the transferee court by the applicable statute of limitations.").

The Sixth Circuit has recognized this principle. *Taylor v. Morrison*, 14 F. App'x 380, 381 (6th Cir. 2001) (affirming the decision to dismiss rather than transfer a frivolous claim); *Meyers*

19

*v. Hurst*, 7 F.3d 234, 1993 WL 413475, at *1 (6th Cir. 1993) (unpublished table decision).[9] *See also Wilson v. Bowlen*, 52 F.3d 327, 1995 Wl 218445, at *1 (6th Cir. 1995) (unpublished table decision) (noting that district court dismissed motion, in part, "for the reason that the petition was . . . utterly frivolous and not meriting a transfer to the correct forum."); *Taylor v. Morrison*, Nos. 00-3004 (Civ.), 96-20014 (Crim.), slip op., at * 5-6 (W.D. Tenn. Nov. 2, 2000) (collecting cases), *aff'd* 14 F. App'x at 381.

### d.    *Properly Construing the Petitioner's Request*

These jurisdictional issues, as well as the successive motion limitations, have teeth and thus force courts to accurately construe petitioners' often murky requests. *In re Shelton*, 295 F.3d 620, 622 (6th Cir. 2002). Requests  not clearly intended as section 2255 motions but best encompassed by that section, can be re-characterized as 2255 motion if the *pro se* petitioners are notified and allowed to withdraw the petition. *See Castro v. United States*, 540 U.S. 375, 377 (2003) ("[W]e hold that the court cannot so recharacterize a *pro se* litigant's motion as the litigant's first § 2255 motion *unless* the court informs the litigant of its intent to recharacterize, warns the litigant that the recharacterization will subject subsequent § 2255 motions to the law's 'second or successive' restrictions, and provides the litigant with an opportunity to withdraw . . . ."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 509 (6th Cir. 2011) (same); *Williams v. United States*, 366 F.3d 438, 439 (7th Cir. 2004) (same); *In re Shelton*, 295 F.3d at 622 (same).

The rule's rationale is the unfairness of subjecting petitioners' future 2255 motions to the onerous successive motion requirements when they never intended to file an initial 2255 motion.

---

[9] In *Roggio v. Clark*, the court opaquely suggested that the "interests of justice" analysis does not allow examining the merits. 977 F.2d 582, 1992 WL 289565, at *1 (6th Cir. 1992) (unpublished table decision). However, it cited in support a Supreme Court decision reprimanding a lower court that went beyond this threshold "interests of justice" determination and actually disposed of the lawsuit on the merits. *Id.* (citing *Christianson*, 486 U.S. at 818-19). Nonetheless, the Sixth Circuit stated that the district court "need not be a conduit for all of petitioner's cases," and thus "it was not an abuse of discretion to refuse to transfer the case." *Id.*

*Castro*, 540 U.S. at 377. Thus the rule does not apply to petitioners who previously filed section 2255 motions: they already face the additional constraints on successive motions. *United States v. McDonald*, 326 F. App'x 880, 882 n.1 (6th Cir. 2009); *Jiminian v. Nash*, 245 F.3d 144, 148 (2d Cir. 2001); *Allen v. United States*, Nos. 06-10015 (Civ.), 97-50021-3 (Crim.), 2006 WL 123782, at *1 (E.D. Mich. Jan. 16, 2006).

Consequently, courts must discern the petitioners' intent, specifically whether the litigant's proposed relief parallels that available under section 2255. *See Castro*, 540 U.S. at 381-82 (noting that courts sometimes re-construe the motion "to create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis"). The petitioners' captions and labels therefore do not irrevocably fix the type of the petition. *Id.*; *Collins v. Holinka*, 510 F.3d 666, 667 (7th Cir. 2007) ("[T]he caption on a document does not matter."); *United States v. Winestock*, 340 F.3d 200, 203 (4th Cir. 2003) (noting "the longstanding practice of courts to classify *pro se* pleadings from prisoners according to their contents, without regard to their captions"). This prevents petitioners from calling their motion a 2241 petition to evade the successive motion constraints. *See Calderon v. Thompson*, 523 U.S. 538, 553 (1998); *Winestock*, 340 F.3d at 203.

Where the petitioner, without apparent confusion, clearly intends to file under section 2241 rather than 2255, the court should not re-characterize the request. *Wyatt v. United States*, 574 F.3d 455, 460 (7th Cir. 2009) ("[C]ourts must respect a litigant's decision to invoke a certain statute and must resolve the case under that law."); *Watford*, 2012 WL 1301247, at *2 ("Even though a petition might appear to be attacking the conviction or sentence under § 2255, if a petitioner genuinely proceeds under § 2241, the court must honor that."); *United States v. Kirkpatrick*, No. 1:96-cr-81, 2009 WL 2823658, at * (E.D. Tenn. Aug. 28, 2009) ("The Court should not override

21

and disregard the *pro se* litigant's deliberate choice of the procedural vehicle for presenting and pleading his claim."). Accordingly, the Sixth Circuit in *In re Walker* was "disinclined" to re-characterize the petition where it was filed under section 2241 and the petitioner "expressly state[d] that he [did] not seek permission to file a second or successive § 2255 motion to vacate." 238 F. 3d 426, 2000 WL 1517155, at *1 (6th Cir. 2000).

### 2.    Analysis

#### a.    *Berry's Motion is Properly Characterized as a Section 2241 Petition*

Berry intended his petition to fall under section 2241 through the savings clause. He labels his filing as a section "2255(F)(3)" motion apparently under the misapprehension that section 2255's statute of limitations applies to savings clause claims. But his Motion and Brief explicitly rely on section 2241. He cites only section 2241 in the body of the former, and begins the latter by again citing that section.[10] (Doc. 132 at 2; Doc. 133 at 1.) Critically, he states

> Petitioner's remedy is inadequate under § 2255 because [P]etitioner has filed [one] section 2255, and [P]etitioner argues that he is actually innocent of the conviction of being a felon in constructive possession of a firearm in Counts (5), and [P]etitioner argues that he may challenge the imposition of his conviction and sentence under § 2255(E) savings clause, based upon Supreme Court decisions announcing new rules of statutory construction unavailable for attack under § 2255.

(Doc. 133, at 6-7.) Beneath this block he notes somewhat cryptically, "Petitioner's remedy is inadequate or ineffective when the prisoner relies on a non-constitutional decision rendered after the statute of limitations in § 2255(F) expired." (*Id.* at 7.) The next few pages describe section 2255 standards, but he never contradicts his earlier assertion that section 2255 relief was inadequate. (*Id.* at 11-13.) Later, he reiterates that "[h]e has no adequate or effective remedy under section 2255

---

[10] An illegible scribble above the cite appears to include section 2255.

and, therefore, § 2255(E)'s savings clause allows him to apply for relief under § 2241 . . . ." (*Id.* at 31.)

His entire argument seeks to satisfy the "inadequate and ineffective" requirement. He contends that he is actually innocent of his conviction of being a felon possessing a firearm, possessing crack cocaine, and being an armed career offender. (*Id.* at 14, 19, 28.) He adds an ineffective assistance of counsel claim based on the same grounds. (*Id.* at 1.) Finally, he discusses two Supreme Court cases that supposedly work a retroactive change in the law, allowing him to bring the case. (*Id.* at 7-11, 27.) The argument thus proceeds without any hint that Berry confused the legal standards, even if he fails to describe them accurately. The claims may properly fit in a section 2255, but that is not the relief he requests.

Declining to re-characterize, however, raises a danger akin to that in *Castro*. As noted above, petitioners must bring successive 2255 petitions within one year of a Supreme Court decision issuing a new rule of law. Sometime during that year, the Supreme Court must declare the rule retroactive. As a result, courts will transfer rather than dismiss cases under 28 U.S.C. § 1631, *Roman*, 340 F.3d at 328, if the statute of limitations would prevent re-filing. The two cases Berry relies on were issued in June 2013. (Doc 133, at 7, 27 (citing *Descamps v. United States*, 133 S.Ct. 2276 (2013); *Alleyne v. United States*, 133 S.Ct. 2151 (2013)). Reshaped as a 2255 motion, his petition meets the statute of limitations. Dismissing the case would push any re-filing past the statute of limitations.

However, failing to re-characterize, and thus holding him to the consequences of his deliberate decision, puts him in no worse a position. He has no hope of satisfying sections 2255(f)(3) and 2255(h)(2): the Supreme Court did not make the cases retroactive within one year. Nor have lower courts found them to be retroactive. The outcome in *Descamps*, the Court noted,

23

was "all but resolve[d]" by prior caselaw. *Descamps*, 133 S.Ct. at 2283. Accordingly, courts have not found it to be a new rule, let alone retroactive. *United States v. Montes*, No. 14-2015, 2014 WL 3032185, at *1 (10th Cir. 2014); *United States v. Davis*, 751 F.3d 769, 775 (6th Cir. 2014). The Sixth Circuit likewise rejected a petitioner's request to authorize a successive 2255 motion based on *Alleyne*. *In re Mazzio*, 756 F.3d 487, slip op. at *6 (6th Cir. 2014). The rule in *Alleyne* was not retroactive because "it is not a substantive rule and it also does not meet the high standard for new rules of criminal procedure." *Id.* at *5-6. *See also Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013).

### b.   *The Interests of Justice Do Not Require Transfer*

A "peek" at the merits reveals that Berry's claim is "doomed," and that transfer is unnecessary. *See Phillips*, 173 F.3d at 610. The initial mark against his petition is its resemblance to his prior contentions, despite the new ineffective assistance of counsel overlay. It thus appears to be an improper attempt to relitigate prior claims. *See Haynes v. United States*, No. 07-20639, 2014 WL 103216, at *10 (E.D. Mich. Jan. 10, 2014) (adopting Report and Recommendation) ("[W]here the appellate court has found the underlying arguments to be without merit, any claims that his trial attorney was ineffective for failing to raise these same errors are also procedurally barred."); *Clemons v. United States*, Nos. 3:01-CV-496, 3:97-CR-16, 2005 WL 2416995, at *2 (E.D. Tenn. Sept. 30, 2005) ("[Petitioner] cannot use a § 2255 proceeding, in the guise of ineffective assistance of counsel, to relitigate issues decided adversely on him on direct appeal."). In particular, he again attacks his sentencing, *Berry*, 565 F.3d at 339-43; (Motion for Sentence Mod., Doc. 123; Doc. 132), and again claims that he was not on probation when he was arrested. (Mot. to Vacate, Doc. 104.)

Reanimating old claims in this context is doubly fatal. Claims previously brought and denied on appeal are generally not available to petitioners on collateral attack absent "exceptional circumstances, such as an intervening change in the law." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). Yet petitioners waive claims they failed to litigate on appeal unless "the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Reed v. Farley*, 512 U.S. 339, 348 (1994)).[11] In other words, Berry either previously litigated the claims, and is barred, or failed to previously litigate the claims, and is barred.

Parsing his prior arguments for these procedural bars is unnecessary, however, because in any case he cannot show that he was actually innocent.[12] To prove his case, Berry must not only show an intervening change in the law rendering him innocent, *Enigwe*, 92 F. App'x at 317, but also that section 2255 does not provide an avenue for this claim. *Davenport*, 147 F.3d at 611. He can satisfy this savings clause showing only by selecting a case issued after his 2255 claim, that purportedly changes the law and provides a claim un-cognizable under section 2255.

His first 2255 motion was filed on July 1, 2010, (Doc. 104), and denied on April 29, 2011. *Berry*, 2011 WL 1627902. He had free reign to argue the merits of contemporaneous case law at

---

[11] Ineffective assistance of counsel claims are not subject to waiver for failing to bring them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

[12] Berry's ineffective assistance of counsel claim is largely irrelevant to whether he can succeed under the savings clause. "[S]everal courts have explicitly rejected reliance on ineffective assistance of counsel to invoke § 2255's savings clause." *Best v. Wilson*, No. 11-26, 2011 WL 3319723, at *1 (E.D. Ky. Aug. 1, 2011) (citing *Ball v. Conner*, 83 F. App'x 621, 622 (5th Cir. 2003); *Coakley v. Tombone*, 67 F. App'x 248, 248 (5th Cir. 2003)); *Matthews v. Shartle*, No. 4:07CV1349, 2007 WL 2407080, at *2 (N.D. Ohio Aug. 22, 2007) ("[A]ny claim of an invalid guilty plea or ineffective assistance of counsel are not claims of actual innocence for the purpose of seeking § 2241 relief."). The Sixth Circuit rejected the petitioner's attempt to fuse actual innocence and ineffective assistance in *Bennett v. Lamanna*, 27 F. App'x 294, 295-97 (6th Cir. 2001). There, the petitioner "essentially argued that he is 'actually innocent' of his crimes because counsel rendered ineffective assistance throughout the proceedings." *Id.* at 296. The savings clause does not countenance these claims; it only permits petitioners to bring claims that the AEDPA would otherwise bar. Unless the claim is built on new law, nothing prevents petitioners from bringing ineffective assistance arguments in the first 2255 motion.

that time. Any "changes" in the law occurring prior to that filing, therefore, do not render section 2255 inadequate. Only later cases or changes will suffice. *Strickland v. English*, No. 13-14082, 2014 WL 1979870, at \*2 (11th Cir. May 16, 2014) ("[T]o the extent that Mr. Strickland's substantive claims are based upon these decisions [decided prior to his first 2255 motion], such claims could have been asserted in his first § 2255 motion and cannot help him here."). But not all such changes are fair game: they cannot be cognizable under section 2255(h) or else they could have been brought as successive 2255 motions.

Berry's brief cites a few cases that could fit the bill,[13] but he only presents an argument on one, *Descamps*. According to Berry, though the Supreme Court did not declare it retroactive, "*Descamps* is a statutory interpretation case, which is a new substantive rule and substantive rules are always retroactive!!" (Doc. 133, at 9, 53.) (emphasis omitted). This hints at the proper line of reasoning. *Descamps* was decided after Berry's initial 2255 motion and potentially provides a statutory claim; therefore it would be beyond section 2255 review, triggering the savings clause.

A single line from *Descamps* is enough to damp Berry's hopes: "Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case." 133 S.Ct. at 2283. The holding, then, was not "new." The Sixth Circuit characterized *Descamps* as merely summarizing precedent, "not [as] announcing a new rule . . . ." *Davis*, 751 F.3d at 775. Indeed, only a few highly divided Ninth Circuit en banc panels had subscribed to the view rejected in *Descamps*. *United States v. Beardsley*, 691 F.3d 252, 265-66 (2d Cir. 2012) ("Most of our sister circuits . . . have adopted a divisibility rule for the modified categorical approach. . . . Only the Ninth Circuit has clearly rejected a divisibility requirement for the modified categorical approach

---

[13] *Descamps*, 133 S.Ct. 2276; *Alleyne*, 131 S.Ct.2151; *Henderson v. United States*, 133 S.Ct. 1121 (2013); *Premo v. Moore*, 131 S.Ct. 733 (2011). He also cites *United States v. O'Brien*, 560 U.S. 218 (2010), decided the month before he filed.

. . . .").[14] Even if Berry faced a tough slog bringing the claim prior to *Descamps*, this alone does

not mean section 2255 was inadequate. A meritorious claim under section 2255 was not foreclosed

simply because it had dim prospects for success. *Prost v. Anderson*, 636 F.3d 578, 590 (10th Cir.

2011). The petitioner in *Prost*, in even worse straits than Berry, complained had he brought his

claim prior to a relevant Supreme Court decision, the lower courts would have rejected it"because

of adverse circuit precedent . . . ." *Id.* The court noted, "the plain language of the savings clause

does not authorize resort to § 2241 simply because a court errs in rejecting a good argument . . .

." Section 2255 adequately tests such arguments and consequently, could have tested Berry's

current argument, which was available to him in 2010 whether or not its success seemed likely.

Even assuming the Supreme Court was mistaken, and that *Descamps* wrought fundamental

change, Berry's argument fails nonetheless. *Descamps* delineates the materials courts can use

during sentencing to determine whether the prisoner's previous crimes serve as predicate offenses

under the Armed Career Criminal Act ("ACCA"). The ACCA defines defendants who violate 18

U.S.C. § 922(g) as career offenders if, among other things, they have "at least two prior felony

convictions of either a crime of violence or a controlled substance offense." 18 U.S.C. § 924(e)(1).

A violent felony is "any crime punishable by imprisonment for a term exceeding one year" that

includes the use or threat of physical force or is similar to a series of listed offenses which

"involve[] conduct that presents a serious potential risk of physical injury to another." *Id.* §

---

[14] Some ambiguous precedent existed in the Sixth and Tenth Circuits. *Id.*; *United States v. Bell*, Nos. 09-14-H-DWM (Crim.), 13-47-H-DWM (Civ.), 2013 WL 6190281, at *2 (D. Mont. Nov. 26, 2013) (stating that *Descamps* abrogated one Sixth Circuit holding). *See also United States v. Gomez*, 690 F.3d 194, n.1 (4th Cir. 2012) (suggesting that these circuits used "the modified categorical approach [for] both divisible and indivisible statutes"). But the holdings in those cases did not clearly allow a court to use the modified categorical approach for indivisible statutes. *United States v. Ventura-Perez*, 666 F.3d 670, 676 (10th Cir. 2012) (noting that if the criminal statute included broader terms and alternatives, the court could examine documents under the modified categorical approach); *United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006) ("If the statutory definition embraces both violent and non-violent crimes or is otherwise ambiguous, the court . . . may look to" outside documents.). The law when Berry was sentenced and when he filed his first 2255 motion was clear enough. He lost the claim by not raising it then.

924(e)(2)(B). *See also* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1; *United States v. Mosley*, 575 F.3d 603, 605 (6th Cir. 2009). "[T]he phrase 'physical force' means *violent* force–that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). A "controlled substance offense" is one that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute or dispense." U.S.S.G. § 4B1.2(b). "Two prior felony convictions" means that a defendant "committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense" as defined above. U.S.S.G. § 4B1.2(c).

In *Taylor v. United States*, the Supreme Court adopted a categorical approach for determining whether a defendant is subject to an enhanced penalty under the ACCA. 495 U.S. 575, 600 (1990). Courts deciding whether an offense is "violent" should generally consider only the fact of conviction and the statutory definition of the prior offense, not the particular facts in the underlying case. *Id.* at 600-01. Divisible statutes, containing alternative violations, confound the analysis. For these, the Supreme Court prescribed a modified categorical approach to determine which alternative the defendant was convicted under. *Shepard v. United States*, 544 U.S. 13 (2005). This approach allows a "court [to] look beyond the statute and the fact of conviction to the indictment or information and jury instructions . . . [but] the court still may not consider the details of the defendant's crime." *United States v. Soto-Sanchez*, 623 F.3d 317, 320 (6th Cir. 2010). *Descamps* merely confirmed that the modified approach applies only to divisible statutes. 133 S.Ct. at 2283.

28

The holding could only conceivably apply to part of Berry's claims. He asserts that three of "the prior convictions the government relied upon" in its ACCA analysis were "invalid for purposes of career offender enhancements." (Doc. 133, at 30.) But none of the arguments in his Brief contend that the court used impermissible materials to decide his ACCA status. (*Id.* at 33-35.) Instead, he claims the presentence investigation reports listing the convictions were factually inaccurate. (*Id.* at 29.) Specifically, his 1971 breaking and entering conviction was not a violent crime, his 1982 drug conviction was not a serious drug offense, and his 1991 drug offense conviction was not an available predicate offense because it was discharged. (*Id.* at 34-35.) These claims did not spring to life after *Descamps*; they have nothing to do with that case and could have been brought in the initial 2255 motion.[15] *Cf. Williams*, 713 F.3d at 1334-45 ("At the time of Williams's direct appeal and first § 2255 motion, there was no circuit precedent that foreclosed him from raising the claim that his burglary convictions should not count as violent felonies . . . . In these circumstances, his direct appeal and first collateral attack were not inadequate or ineffective to test the legality of his detention, and the savings clause does not apply.").

Berry does not develop any argument under *Alleyne*, but he cites it enough to warrant brief comment here. (Doc. 133, at 27, 35.) That decision overruled prior precedent and held "that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S.Ct. at 2155. The Sixth Circuit declined to decide whether it established "a new rule of constitutional law," but noted that Judge Frank Easterbrook declared it did. *In re Mazzio*, 756

---

[15] Perhaps realizing his argument did not rely on the "new" law in *Descamps*, Berry's proposed amendment to his motion alleges the court erred by supposedly "conclud[ing] that [his] prior state court convictions . . . constituted a 'crime of violence' or a 'serious drug offense' by using the factual recitation in the [presentence report]." (Mot. to Amend, Doc. 138, at 5.) This could trigger *Descamps*, if valid. It is not: the Sixth Circuit has upheld the reasonableness of the sentence, *Berry*, 565 F.3d 332, and the sentence has weathered other attacks. *Berry*, 2014 WL 2607367; *Berry*, 2011 WL 1627902. In any case, he never directly asserts the court employed *Shepherd* materials to examine an indivisible statute.

F.3d at 490 n.2 (citing *Simpson*, 721 F.3d at 876). Assuming it is a new constitutional rule, it would

cover Berry's case only if retroactive,[16] which it is not. *In re Mazzio*, 756 F.3d at 491. Section 2255

---

[16] Whether constitutional claims are always potentially cognizable under section 2255(h), and thus unavailable under the savings clause, is somewhat unclear. Many courts properly find that constitutional claims not yet made retroactive do not satisfy the savings clause. The First Circuit noted the problem in *Sustache-Rivera v. United States*, 221 F.3d 8, 16 (1st Cir. 2000). "The savings clause has most often been used as a vehicle to present an argument that, under a Supreme Court decision overruling the circuit courts as to the meaning of a statute, a prisoner is not guilty within the new meaning attributed to the statute." *Id.* There is no problem finding this scenario falls within the savings clause because section 2255 does not address successive claims based on new statutory interpretations. *Id.*

When the new claim is constitutional, however, the correct solution requires more thought. In such a case, the First Circuit noted,

> there is less reason to resort to the savings clause, as Congress permits new constitutional rule claims to be made on second or successive petitions . . . . If the Supreme Court does not ever make the decision retroactive, the prisoner is no worse off than before. If the Supreme Court eventually makes the rule retroactive, the prisoner may at that time attempt a claim by second or successive § 2255 petition.

*Id. See also Calvache v. Benov*, 183 F. Supp. 2d 124, 129 n.6 (D. Mass. 2001) (discussing *Sustache-Rivera*, and noting that "[t]his dictum suggests that the First Circuit is unsympathetic to the argument that the inability to bring a new *constitutional* claim should trigger the savings clause"). *See also In re Jones*, 226 F.3d 328, 333-34 (4th Cir. 2000) (concluding that section 2255 was inadequate if, among other things, "the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law"); *Francis v. Brooks*, No. 2:04CV341, 2004 WL 3188081, at *3 (E.D. Va. June 16, 2004) (noting that constitutional claims can be brought only under section 2255); *Young v. Conley*, 128 F. Supp. 2d 354, 357 (S.D. W.Va. 2001) ("Constitutional challenges to the validity of a conviction or a sentence must be brought under § 2255, as Congress intended and for which § 2255 provides.").

The underlying supposition in these cases appears to be that Congress, by limiting successive motions to explicitly retroactive "new rule" constitutional claims, did not make section 2255 "inadequate or ineffective" in dealing with non-retroactive "new rule" constitutional claims–rather, it precludes them altogether. Therefore, under this reasoning, section 2255 is not inadequate merely because it fails to recognize claims it purposefully precludes. "To allow petitioners to use section 2241 to raise new constitutional claims before the Supreme Court has held that they should be applied retroactively on collateral review would fly in the face of Congress's attempt to restrict those very petitions through its addition of the pre-clearance requirements in section 2255." *Calvache*, 183 F. Supp. 2d at 129 n.6.

The First Circuit consigned the more difficult issue to a footnote and declined to answer it: what happens when lower courts declare it retroactive, or the Supreme Court does so more than one year after first announcing the rule? *Id.* at 16 n.15. The court appears to have assumed that section 2255(f)(3)'s statute of limitations did not apply to successive claims. *Id.* at 16 ("If the Supreme Court eventually makes the rule retroactive, the prisoner may at that time attempt a claim by second or successive § 2255 petition."). Yet, after *Dodd*, 545 U.S. at 359, any claim based on a new constitutional rule the Supreme Court makes retroactive one year and a day after first announcing it is forever lost to petitioners hoping to invoke section 2255 or 2241. Thus, this would bar even those new constitutional rules declared retroactive by the Supreme Court more than one year later.

This interpretation results in a strange framework that is more solicitous of statutory than constitutional errors: the savings clause could remedy erroneous convictions if they were based on a new interpretation of a statute,

is not inadequate simply because courts have rejected *Alleyne*'s retroactivity. Were it otherwise, and non-retroactive claims sufficed for the savings clause, Berry would bring the 2241 petition under *Alleyne* only to be told it did not apply when he was convicted. Alternatively, if *Alleyne* is not a new constitutional rule, then it was available to him before and section 2255 proved adequate.

Berry does not argue that his remaining claims result from intervening changes in the law. And they would remain meritless nonetheless. He asserts two problems with the form of Count Five in his indictment. (Doc. 133 at 14-19.) That count states that Berry,

> being a person who had previously been convicted of one or more crimes punishable by imprisonment for a term exceeding one year, did knowingly and intentionally possess one or more firearms, in and affecting commerce, in violation of Title 18, United States Code, section 922(g)(1), 924(a)(2) and (e)(1).

(Indictment, Doc. 3 at 3.) The first statute cited prohibits fugitives from "possess[ing] or affecting commerce, any firearm or ammunition . . . which has been shipped or transported in interstate commerce." 18 U.S.C. § 922(g)(2). The second deals with sentencing for section 922 violations. *Id.* § 924.

Berry claims he is "actually and factually innocent" of this crime because the indictment (1) did not name the type of firearm he possessed, and (2) did not adequately assert the necessary connection to interstate commerce. (Doc. 133 at 14-19.) This unique gloss on actual innocence

---

but not if they were based on a new constitutional rule expressly made retroactive by the Court more than a year after its creation. The only way around this outcome is if the Court decision declaring retroactivity after the rule's first year would itself count as a new rule resetting the statute of limitations. Moreover, both new statutory claims and new constitutional claims made retroactive after one year appear to sit in the same boat, as far as the statute's text is concerned. Both are, in some sense, purposefully excluded from successive 2255 motions. Why this exclusion should have a different import on the adequacy of section 2255 for each type of claim is unclear.

This Court is thankfully spared from deciding that issue. The analysis in the text above suffices to dispose of claims, like Berry's, purportedly based on "new rules" that have never been declared retroactive.

suffers several fatal defects. Most importantly, it fails to present proof that his actions were something other than criminal. Additionally, the indictment sufficiently specified that he had a "firearm," and did not need to distinguish it from short-barreled rifles or machineguns. 18 U.S.C. § 924(c)(1)(B); *O'Brien*, 560 U.S. at 234; *Castillo v. United States*, 530 U.S. 120, 124-25, 131 (2000). The indictment also adequately alleged the commercial nexus by mirroring section 922's language. *United States v. Troy*, 618 F.3d 27, 34-35 (1st Cir. 2010) (noting that similar language in the indictment adequately mirrored the text); *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) ("'An indictment will usually be sufficient if it states the offense using the words of the statute itself . . . .'" (quoting *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992)).

Finally, he contends that the first three indictment counts are mutliplicitous because they involve the same conduct. (Doc. 133 at 19-28). A multiplicitous indictment charges a single offense over multiple counts. *United States v. Starks*, 472 F.3d 466, 468-69 (7th Cir. 2006); *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997). "The threat of multiple sentences for the same offense raises double jeopardy implications." *Johnson*, 130 F.3d at 1424. The three counts Berry disputes charged that he possessed and intended to distribute (1) less than five grams of crack cocaine, (2) five or more grams of crack cocaine, and (3) less than five-hundred grams of powder cocaine. (Doc. 3 at 1-2.) They are not multiplicitous because they cover discrete violations. The Sixth Circuit described the facts leading to each indictment:

> At approximately 10:00 p.m. on April 29, 2005, task force [police] officers saw Berry alone, driving a Cadillac . . . . The officers arrested him as he exited the car and then searched the car incident to the arrest. On the floor of the car, immediately in front of the driver's seat, they found a number of rocks of suspected crack cocaine in plastic sandwich bags. Officers field-tested the drugs and confirmed the presence of cocaine. . . .

> The officers then decided to obtain a search warrant for 1228 Asbury Court [Berry's residence]. . . .
>
> Officers conducted the search during the early morning hours of April 30. . . . In a safe in the bedroom, they found a single rock of crack cocaine weighing approximately 17 grams and a zip-loc bag containing 12 grams of powder cocaine.

*Berry*, 565 F.3d at 335-37. At trial, the government also sketched for the jury the separate conduct underlying each count:

> Possession with intent to distribute less than five grams of crack cocaine [is the first count]. That charge relates to the crack cocaine that was found in the Cadillac that was in the driveway . . . on April 29, 2005. The defendant was driving it at the time he was arrested.
>
> Count 2 charges the defendant with possession with intent to distribute five grams or more of crack cocaine. This relates to the 17.8 grams of crack cocaine that were found in the safe during the search at 1228 Asbury Court [Berry's address].
>
> Count 3 charges the defendant with possession with intent to distribute less than five hundred grams of cocaine. . . . This is a separate charge . . . because it's a separate substance under federal law.

(Trial Transcript, Doc. 95 at 66-67.) Thus, Berry's claim lacks merit: separate stashes of drugs found during different searches constitute separate indictable offenses.

In short, his actual innocence arguments challenge his sentence. The Sixth Circuit has stated that "the savings clause . . . as it has been interpreted by this court, is 'actual innocence of the underlying, substantive offense, not "innocence" of a sentencing factor.'" *Green v. Hemingway*, 67 F. App'x 255, 257 (6th Cir. 2003) (quoting *Rumler v. Hemingway*, 171 F.Supp.2d 705, 709 (E.D.Mich. 2001), *aff'd*, 2002 WL 1940971 (6th Cir. 2002)). His claims fail in any case and should be dismissed.

## III.     <u>Conclusion</u>

Berry attempts to use 2255's savings clause to bring a 2241 petition. However, he asks the wrong court for relief–only the confining district has jurisdiction over his claim. The case could be transferred there in the interests of justice. However, because his arguments are meritless, transfer would prolong doomed claims and is thus unnecessary. I therefore recommend that the case be dismissed without prejudice.

## III.     <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response

proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 4, 2014                        /S PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record, and served by first class mail on Lee Henry Berry, #05032-039, FCI McKean, P.O. Box 8000, Bradford, PA, 16701.

Date: September 4, 2014                    By    s/Jean L. Broucek
                                                Case Manager to Magistrate Judge Morris